UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHIRAG PATEL, M.D. | * | CIVIL ACTION NO. 20-3329 |
| | * | |
| VERSUS | * | SECTION "E" |
| | * | |
| MARRIOTT CORPORATION, | * | JUDGE MORGAN |
| GUMBO ALLEY, LLC, | * | |
| SUNSTONE HOTEL INVESTORS, | * | MAGISTRATE JUDGE 04 |
| STAFF PRO, LLC, | * | |
| JANE DOE, & | * | MAGISTRATE JUDGE ROBY |
| JOHN DOE | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## JOINT PRE TRIAL ORDER

**1.    DATE OF CONFERENCE**

The pre-trial conference is scheduled on Thursday, May 26, 2022, at 4:00 p.m.

**2.    APPEARANCE OF COUNSEL**

**Counsel for Plaintiff, Dr. Patel Chirag:**
**RON A. AUSTIN (#23630)**
**CATHERINE HILTON (#27238)**
**RON AUSTIN LAW LLC**
**400 Manhattan Blvd.**
**Harvey, LA  70058**
**Telephone:  (504) 227-8100**
**Fax:  (504) 227-8122**
raustin@ronaustinlaw.com
chilton@ronaustinlaw.com

**Attorneys for Defendants, and Marriott Hotel Services, Inc.:**

**Lance S. Ostendorf, Esq.**
**John G. Alsobrook, Esq. (T.A.)**
**OSTENDORF TATE BARNETT, LLP**
**650 Poydras Street**
**Ste. 146**

1

New Orleans, LA 70130
Telephone:   (504) 324-2244
Facsimile:   (504) 208-3447
E-mail:      lanceostendorf@otbtlaw.com
             johnalsobrook@otbtlaw.com

3.     **DESCRIPTION OF PARTIES**

a.     Chirag, Patel, M.D., is an interventional cardiologist who practices medicine and lives in New Jersey.  He completed a cardiology fellowship in 2018 and an interventional cardiology fellowship in June 2019 and began his own practice shortly thereafter in 2019 at South Orange Avenue Medical Associates in Newark, New Jersey and also in South Orange, New Jersey. He was injured while staying at the JW Marriott Hotel in New Orleans as a guest on October 22, 2019.

b.     Defendant, Gumbo Alley, LLC, is a foreign limited liability company that is authorized to do and doing business in the Parish of Orleans and State of Louisiana, and is the owner of the ground lease on which the hotel is located. Plaintiffs have agreed to dismiss Gumbo Alley, LLC as a defendant in this matter. Defendant, Marriott Hotel Services, Inc., is a foreign corporation that is authorized to do and doing business in the Parish of Orleans and State of Louisiana, and is the operator of the JW Marriott New Orleans Hotel.

4.     **JURISDICTION**

This Court has jurisdiction over this matter pursuant to diversity of citizenship, 28 U.S.C. 1442.  There is no objection to the Court's jurisdiction.

5.     **PENDING MOTIONS**

Plaintiff has filed  a Motion in Limine seeking the exclusion of Defendant's expert(s). Other  Motions in Limine and/or Motions for Adverse Presumptions may be filed.  Plaintiff will file Motions seeking to strike/dismiss any irrelevant affirmative defenses.

Defendants intend to file a motion for summary judgment, motions in limine, and motion to exclude speculative testimony by the plaintiff and plaintiff's expert witnesses' reports and testimony, as set forth by the Court in its revised scheduling order.

**6.     BRIEF SUMMARY OF MATERIAL FACTS**

    **a.     PLAINTIFF'S SUMMARY OF FACTS**

1.  Plaintiff and his wife were hotel guests checking out of the J.W. Marriott  at around 4:00 a.m. on October 22, 2019 to catch their flight home, after his wife gave a presentation at a conference in New Orleans.

2.  The Patels were leaving the hotel more than three (3) hours before their flight home was scheduled to leave and Dr. Patel was not in a hurry when traversing the wet floor of the lobby.

3.  When Plaintiff, aged 33,   left the front desk, he slipped on the freshly mopped marble/stone/tile floor, fell forward, and broke his fall by reaching forward and grabbing the side of one of the front desks with his right arm.  He felt an instant snap and pain in his right shoulder.

4.  The violent movement and instinctive action to block a fall resulted in a Hill-Sachs impaction fracture of the superior/lateral humeral head, and a remote  comminuted fracture (Bankart fracture) of the anterior inferior glenoid of his right shoulder,  a  dislocation of his right shoulder which was reduced twice in the hospital, a partial-thickness cartilage loss along the inferior glenoid, and a near circumferential labral tear.

5. Plaintiff, Dr. Patel, continues to feel pain in his shoulder when lying on it, when lifting anything as minimal as the weight of a gallon of milk over his shoulder, when picking up even his very young nieces or nephews, and when maneuvering patients, wearing the heavy lead vest he must wear for certain procedures and when performing certain medical procedures on patients.

6. His treating physician, Dr. Michael H. Rieber, has opined that a fracture dislocation of a joint permanently damages that joint; and that injury, along with damage, he more likely than not, will not get back to his preinjury level.

7. Dr. Rieber has recommended an arthroscopic labral reconstruction as well as acromioplasty with subacromial decompression and a subpectoral biceps tenodesis.

8. The IME physician, Dr. Claude Williams, opined that if he has the surgery recommended by Dr. Rieber, he would "be limited in his use of the right upper extremity for 3-6 months and have a required course of postoperative therapy of at least 6 weeks. Dr. Williams opined that aside from the surgical procedure, he is at "maximum medical improvement with a partial permanent impairment of the right shoulder.

9. Dr. Patel will testify that he already has to forego up to three procedures each week due to pain; that often when a patient is referred to another physician who performs a procedure, the patient will continue forward with the new doctor and thus he is concerned about taking off the time for surgery this early in his practice.

10. When Dr. Patel exited the front desk area, there were no wet floor signs present in that area of the lobby that warned him that the floor he was about to traverse had just been mopped. The mopping and the fall were both recorded on video. Dr. Patel slipped and fell forward into the desk within seconds of the water being applied to the floor.

11. All Marriott witnesses who testified agreed that a wet floor presents a risk hazard for falls.

12. Kizzy Williams, the housekeeper who performed the mopping testified that she usually puts down seven (7) signs in the lobby before mopping (Depo. P. 31). Sometimes she may have to move a sign if she doesn't have enough signs. (Depo. P. 31). If she has to move a sign, she takes it from a dry area and moves it before she begins to mop another area. (Depo. P. 31). She did not recall if she had enough signs on October 22, 2019 to cover the whole lobby without having to move a sign. (Depo. P. 31). She also testified that she does not mop an area if she has a guest in that area. (Depo. P. 35). (Defendant objects as this is not a fact, but an issue of law.)

13. Kizzy Williams testified she had four signs in that section of the lobby on October 22, 2019: one by the elevator banks, one by the executive door, one by the exit door, and one in the middle of the lobby floor by the front desk area.

14. Video of the lobby area near the front desk reveals that there were no signs in the front desk area.

15. Video of the lobby area clearly demonstrates that Kizzy Williams did not begin to mop the area where Dr. Patel slipped and fell forward until *after* he was already at the front desk, speaking to the front desk clerk, in the area of the lobby where there were no warning signs.

16. Dr. Patel acknowledged in his deposition that he saw the sign by the lobby bank, but no other signs. (Depo. P. 115, 117, 118, 119, 127). He did not see a sign by the entrance/exit door.

17. There were insufficient adequate wet floor signs posted in open space to adequately warn and protect. (Defendants object as this is not a fact, but argument.)

18. Jaimy Patel did not see a wet floor sign by the entrance/exit door either when she and Dr. Patel exited the building.

19. After Dr. Patel was injured, he and his wife left in an Uber and instead of going to the airport, went to the emergency room at Tulane Lakeside. As the detour to the emergency room caused them to miss their flight, they returned to the J.W. Marriott Hotel to report his injury.

20. Dr. Patel and his wife, Jaimy Patel reported to the front desk clerk when they returned to the hotel and advised that Dr. Patel had a slip and fall injury that resulted in a dislocated shoulder. Jaimy Patel asked to speak to a manager while her husband sat down. Later, another person spoke briefly to the Patels about the injury. They were not provided the gentleman's name. Defendant has represented that the interviewer was  Loss Prevention employee, Terry Javery, who was subsequently terminated from his position at the Marriott. Defendant did not produce Terry Javery for his noticed deposition, despite many requests by Plaintiff's counsel.

21. Safety Management Guidelines distributed by Marriott indicate that all observers/witnesses are to be asked to provide a statement of what they saw. The guidelines require Loss Prevention inspect the scene and document.

22. Safety Management Guidelines distributed by Marriott indicate that "public area inspections should be documented."

23. Safety Management Guidelines distributed by Marriott instruct "have wet floor signs available and posted to adequately warn and protect."

24. The purported incident report allegedly prepared by Terry Javery contained information which neither of the Patels provided and is a hearsay document. Terry Javery cannot be a

trial witness because Defendant did not produce Terry Javery for his scheduled deposition after being provided additional time to do so by the Court.

25. The Loss Prevention officer who conducted the "investigation" failed to interview the housekeeper who witnessed the fall and who also allegedly placed warning signs prior to mopping.

26. The Loss Prevention officer failed to obtain a statement from Jaimy Patel.

27. The Loss Prevention officer failed to obtain a written statement from Chirag Patel.

28. The Loss Prevention officer failed to download video evidence, which existed on the date the fall was made known to Defendant, of the housekeeper placing signs so that the time and placement of signs could be determined.

29. Although Supervisors are supposed to review the work of loss prevention officers such as Terry Javery, his supervisor, Ervin Red merely looked over his report and did not determine that Javery's failure to obtain a formal written or recorded statement from Dr. Patel, Kizzy Williams, Jaimy Patel, or Craig Heisser was a breach of duty.  (Defendant objects as this is not fact it is argument as Mr. Red explained no statements were taken because the Incident was captured on video.)

30. Mr. Red did not explain why the preserved video did not include the actual interview of the Patels.

31. Videos recordings from four video cameras, show only one sign in place before the fall and that was by the elevator bank which is  around a corner and many yards from the front desk area.  Dr. Patel slipped on freshly mopped floor as he was leaving the front desk area. His slip was within 13 seconds or less from the time that area was mopped.

32. Loss Prevention failed to preserve any recordings from the four video cameras which would have demonstrated when and where any signs were placed in the lobby prior to mopping. Videos are only preserved for 30 days.

33. Mr. Red could not explain why the preserved video did not include the time that Kizzy Williams placed signs so that the hotel could definitively establish all of the places where signs were placed by Ms. Williams; at what times signs were placed by Ms. Williams; and whether Ms. Williams moved any signs in the middle of mopping.

34. Dr. Chirag Patel has lost significant income as a result of his injuries and will lose significant future income as a result of his injuries.

35. Dr. Chirag is making a claim for loss of earning capacity as well.

36. Dr. Chirag is making a claim for loss of enjoyment of life in addition to his claims for mental and physical pain and suffering (past, present, and future) and medical expenses past, present, and future.

37. Dr. Chirag's current medical expenses are $21,158.62.

38. Dr. Chirag Patel has suffered significant pain and mental distress as a result of his injuries and will continue to suffer significant pain and mental distress as a result of his injuries.

39. Dr. Chirag Patel, even with surgery, will never return to his pre-injury physical state.

**b.     A brief summary of the material facts claimed by GUMBO ALLEY, L.L.C. and MARRIOTT HOTEL SERVICES, INC. :**

The present matter involves an incident on October 22, 2019, around 4 a.m. at the JW Marriott New Orleans Hotel, located at 614 Canal St. in New Orleans, LA. On that date, the plaintiff, Dr. Chirag Patel, claims he slipped and fell in the lobby of said hotel, while the floor was being mopped by the hotel's employee, Kizzy Williams. Dr. Patel has admitted that, before the

alleged incident, he saw two signs warning him that the floor was wet and to use cause at the elevator banks and by the Common St. entrance and exit door. Further, hotel employee, Kizzy Williams, has testified that she warned Dr. Patel that the lobby floor was wet and to use caution, but he appeared to ignore her warning. Prior to the fall, Dr. Patel had walked outside to a vehicle he had retained to drive him to the airport, but had returned to the hotel to retrieve a set of posters that his wife had left in their hotel room. In order to retrieve the posters left in their hotel room, Dr. Patel had to request another key to enter his former hotel room. He re-entered the hotel through the Common St. entrance/exit door and passed the hotels wet floor warning sign in order to walk to the front desk. While at the front desk, Dr. Patel glance over his shoulder and saw Ms. Williams mopping the lobby floor around the counter of the front desk towards the elevator banks. Dr. Patel took the spare hotel room key and walked very fast over the area he had just seen Ms. Williams mop when he slipped.

Although Dr. Patel slipped, he did not fall down onto the floor. Instead, he used his outstretched right arm to catch himself on the counter. Dr. Patel has alleged that this caused him to suffer a dislocated right shoulder, fractures of the glenoid area and humeral head of the right shoulder, and possible torn muscles and tendons in his right shoulder, all of which is denied, except to submit *in arguendo*. After retrieving the posters that he claims his wife had left in their hotel room, Dr. Patel admitted that he was more careful when walking on the lobby floor than before the Incident/

Defendants herein respectfully deny all of those allegations, claims and assertions, but submit them herein *in arguendo*.

After the Incident, Dr. Patel decided to be treated initially at the Emergency Room at Tulane Lakeside Hospital. While he was admitted, Dr. Patel confessed that he was in a hurry to

retrieve items that were left in the hotel room when he slipped on a wet floor. He was diagnosed with a separated shoulder, which was put back in place, given a sling and told to see his doctor upon returning home.

Instead, Dr. Patel returned to the JW Marriott New Orleans Hotel to report the incident. The Guest Illness/Incident Report was written by Loss Prevention Officer Terry Javery. In the description of the incident, Dr. Patel told Mr. Javery that, before he slipped, he saw the wet floor warning sign at the Common Street entrance and exit door.

Upon returning to New Jersey, Dr. Patel did not see a doctor until October 25, 2019, when began treating with Dr. Michael Rieber at Orthopedics Unlimited. A CT Scan with 3D reconstructions were ordered. Dr. Rieber also informed Dr. Patel of the time of healing and he was told that surgery may not be necessary.

On November 20, 2019, Dr. Patel returned to Dr. Rieber and related that he still has some pain and discomfort which was aggravated by certain movements, but overall was improved enough to undergo physical therapy. Dr. Rieber gave Dr. Patel a prescription for physical therapy.

On January 15, 2020, Dr. Patel returned to Dr. Rieber who reported that Dr. Patel had been prescribed physical therapy, but had been unable to go to physical therapy. Dr. Rieber prescribed additional physical therapy. Dr. Patel agreed to do home exercises, exercise at the gym and to return as needed.

Dr. Patel did not return to Dr. Rieber until almost one year later, December 27, 2021, wherein admitted that his condition has improved, but that he still had pain and limitations of his range of motion and comfort. Dr. Rieber also noted Dr. Patel agreed to be more religious in taking his anti-inflammatories and will do a round of physical therapy. Dr. Rieber recommended that Dr. Patel follow-up in one month and an MR Arthrogram of the right shoulder would be considered.

Dr. Patel returned to Dr. Rieber on February 7, 2022, and reported that Dr. Patel had not undergone the MR Arthrogram. Dr. Rieber that the best test rather than surgery would be to undergo the MR Arthrogram and, if he continues to have pain, to discuss his options.

On March 7, 2022, Dr. Rieber reviewed the MRI of Dr. Patel's right shoulder with him, but had good strength and with some discomfort. Dr. Rieber. Dr. Rieber recommended arthroscopic surgery if the pain continued, but that Dr. Patel said that he needed to continue to work, even if he was in pain.

On May 2, 2022, Dr. Pate underwent an independent medical examination with Dr. Claude Williams at Southern Orthopedics Specialists. Dr. Williams read the MRI film of Dr. Patel's right shoulder and reported healing of the glenoid fracture fragment in a surprisingly good position. He also reported a degenerative tear of the labrum from the MRI film. Dr. Williams recommended "a judicious use of nonsteroidal anti-inflammatory medication", physician directed home exercises, and activity modifications, including avoiding repetitive overhead activities and heavy lifting. Dr. Williams further found that Dr. Patel was able to continue to work with some discomfort. However, if the discomfort was significant and limiting, then he would recommend an arthroscopic debridement of the degenerated labrum and open bicep tenodesis. If Dr. Patel chose this option, Dr. Williams opined having him undergo at least 6 weeks of post-operative physical therapy and 3 to 6 months of limited use of his upper right arm. Otherwise, Dr. Williams found Dr. Patel to be at maximum medical improvement.

Dr. Rieber saw Dr. Patel on May 11th, and recommended a right arthroscopic labral reconstruction, acromioplasty with subacromial decompression, and subpectoral biceps tenodesis. Dr. Rieber felt that he would not be able to do his work activities for 4 to 6 weeks.

11

Ronnie Ducote, II, conducted a vocational evaluation of Dr. Patel and felt that he would have a wage loss up to 6 weeks of post-operative physical therapy, if he underwent the surgery.

Further, Dr. Ken Boudreaux, Ph.D., and Dan Cliffe, CPA, performed an evaluation of the potential future lost wage claim. Considering that Dr. Patel earned approximately $300,000.00 in 2020, and $815,467 in 2021, both after the alleged Incident, and based upon the possibility that Dr. Patel could miss between 4 to 6 weeks of work after surgery, if he undergoes surgery, they calculated a future loss wage for Dr. Patel ranging from $62,728 for four weeks of no work to $94,092.00 for missing six weeks of work.

To date, no surgery has been scheduled by or for Dr. Patel.

7.   **UNCONTESTED MATERIAL FACTS**

**Single Listing of Uncontested Material Facts:**

1.   Gumbo Alley, LLC, is the owner of the ground lease for the land on which the hotel is located and has no operational or managerial control of the JW Marriott New Orleans Hotel, located at 614 Canal St., New Orleans, LA.

2.   Marriott Hotel Services, Inc. is the operator of the JW Marriott New Orleans Hotel, located at 614 Canal St., New Orleans, LA.

3.   Marriott Hotel Services, Inc. is the employer of the hotel's employees, including, but not limited to members of its housekeeping and loss prevention departments.

4.   Dr. Chirag Patel was involved in an incident wherein he slipped in the lobby of the JW Marriott New Orleans Hotel around 4 a.m. on October 22, 2019.

5.   Dr. Patel went to the Emergency Room for immediate treatment after leaving the hotel sometime shortly after 4:00 a.m.

6.      Dr. Chirag Patel and his wife Jaimy Patel reported the incident to JW Marriott front desk clerk around 7:00 a.m., after they returned from the Emergency Room.

7.      Kizzy Williams was the MHSI employee who was mopping the floor on October 22, 2019.

8.      Terry Javery was purportedly the MSHI Loss Prevention employee who investigated the reported injury.

9.      Ervin Red was the MSHI Loss Prevention Supervisor who reviewed Terry Javery's report.

10.      William Johnson was the MSHI Loss Prevention Supervisor who supervised Terry Javery on a nightly basis.

11.      Craig Heisser was the front desk clerk on duty at the time of the fall and at the time the fall was reported.

**8.    SINGLE LISTING OF ALL CONTESTED ISSUES OF FACT**

1. The Patels were leaving the hotel more than three (3) hours before their flight home was scheduled to leave and Dr. Patel was not in a hurry when traversing the wet floor of the lobby.

2. The violent movement and instinctive action to block a fall resulted in a Hill-Sachs impaction fracture of the superior/lateral humeral head, and a remote comminuted fracture (Bankart fracture) of the anterior inferior glenoid of his right shoulder, a dislocation of his right shoulder which was reduced twice in the hospital, a partial-thickness cartilage loss along the inferior glenoid, and a near circumferential labral tear.

3. Dr. Patel continues to feel pain in his shoulder when lying on it, when lifting anything as minimal as the weight of a gallon of milk over his shoulder, when picking up even his very young nieces or nephews, and when maneuvering patients, wearing the heavy lead vest he

must wear for certain procedures and when performing certain medical procedures on patients.

4.  To achieve the best outcome, Dr. Patel must undergo the recommended arthroscopic labral reconstruction as well as acromioplasty with subacromial decompression and a subpectoral biceps tenodesis. This surgery would prevent Dr. Patel from performing many of his required work-related procedures for at least 3-6 months.

5.  Dr. Patel loses income when he is unable to perform interventional cardiac procedures. The loss of income comes from immediate loss of income from those procedures and also from the probable long term loss of patients who will choose to remain with the referral doctor who performs the procedures Dr. Patel is unable to perform.

6.  Dr. Patel requires surgery to correct some of his injuries, but Dr. Patel suffered a fracture dislocation of a joint which permanently damages that joint; and he will never get back to his preinjury level, more likely than not.

7.  As Dr. Patel ages, he will suffer increased arthritic changes and increased pain and suffering.

8.  Dr. Chirag Patel has lost significant income as a result of his injuries and will lose significant future income as a result of his injuries.

9.  Dr. Chirag Patel has suffered significant pain and mental distress as a result of his injuries and will continue to suffer significant pain and mental distress as a result of his injuries

10. When Dr. Patel exited the front desk area, there were no wet floor signs present in that area of the lobby where he was before the fall that warned him that the floor he was about to traverse had just been mopped.

11. Dr. Patel slipped and fell forward into the desk within seconds after Kizzy Williams applied water to the area he slipped on with her mop.

12. Kizzy Williams, the housekeeper who performed the mopping failed to properly place a sufficient number  of warning signs in the open in critical areas to properly warn guests and others of the potential hazard of a slip and fall.

13. Whether the three  to four warning signs that are typically placed in the front desk area were present on 10/22/19 and if not, whether the absence of signs created an unreasonable risk of harm.

14. When the wet floor sign that was placed in the area across from the entrance/exit door.

15. Whether the wet floor sign pushed all of the way against the wall, was sufficiently placed to put guests on notice of the risk.

16. Whether a wet floor creates a risk of injury.

17. Whether any wet floor warning sign was visible to Dr. Patel as he exited and/or entered the area, and when.

18. Whether the sign was inadequate to place guests on notice.

19. Video of the lobby area near the front desk reveals that there were no signs in the front desk area.

20. Kizzy Williams did not begin to mop the area where Dr. Patel slipped and fell forward until *after* he was already at the front desk, speaking to the front desk clerk, in the area of the lobby where there were no warning signs.

21. Dr. Patel saw only one sign in the lobby, by the elevator bank, which is across the lobby and around a corner from the front desk.

22. Jaimy Patel did not see a wet floor sign by the entrance/exit door when she exited the hotel.

23. Kizzy Williams was not properly trained with regard to placement of warning signs to prevent injuries from slippery wet floors.

24. Kizzy Williams was not properly supervised with regard to how to prevent injuries from slippery wet floors.

25. Defendant failed to have sufficient, proper policies and procedures in place to protect guests from injuries from slippery wet floors.

26. Terry Javery, the Loss Prevention officer who took Dr. Patel's report of injury, failed to perform a proper investigation.

27. Terry Javery was not properly trained to perform a proper fall/injury investigation.

28. MHSI failed to have proper policies and procedures in place for Loss Prevention to perform proper injury investigations.

29. MHSI failed to preserve video evidence which would have demonstrated the time and placement of all warning signs.

30. There were insufficient and adequate wet floor signs posted in open space to adequately warn and protect.

31. Terry Javery's employment was subsequently terminated for an on-the-job breach and Defendant did not produce him for his deposition.

32. Prior to his fall, Video recordings from four video cameras, show only one sign by the elevator bank which is around a corner and many yards from the front desk area. Dr. Patel slipped on freshly mopped floor as he was leaving the front desk area.

33. The extent of Dr. Chirag Patel's lost wages.

34. The extent of Dr. Chirag Patel's future impairment.

35. The extent that Dr. Chirag Patel's injuries will affect his future income and/or earning capacity.

36. Whether or not there are facts that support any of Defendants' Affirmative Defenses.

37. Whether Plaintiff is entitled to recover $21,158.62 in past medical expenses.

38. Whether Plaintiff is entitled to recover _____ in future medical expenses

39. Whether Plaintiff is entitled to recover for loss of enjoyment of life

40. Whether Plaintiff is entitled to recover for past and future lost wages between $3,112,682 to $4,239,632.

41. MHSI did not maintain any video recordings of Kizzy Williams placing wet floor signs on the morning of October 22, 2019.

42. All Marriott witnesses who testified agreed that a wet floor presents a risk hazard for falls.

****

43. Prior to the incident involving Dr. Patel in the lobby of the JW Marriott New Orleans Hotel, Dr. Patel saw two wet floor warning signs in the lobby of the hotel which were placed at the elevator banks and at the Common St.

44. Prior to the incident involving Dr. Patel in the lobby of the JW Marriott New Orleans Hotel, Dr. Patel witnessed the hotel employee mopping the lobby floor.

45. Prior to the incident involving Dr. Patel in the lobby of the JW Marriott New Orleans Hotel, Dr. Patel was rushing to get posters left in his hotel room and walked onto the lobby floor without caution.

46. Plaintiff's sole or comparative fault.

47. Whether or not the plaintiff was negligent for walking through the lobby knowing that the floor was wet before the incident in question in this litigation.

48. Whether or not the plaintiff was negligent for walking through the lobby without caution when he knew the floor was being mopped and seeing two wet floor warning signs in the lobby of the hotel.

49. The nature, extent and cause of the alleged physical injuries suffered by Dr. Chirag Patel in the incident of October 22, 2019;

50. Whether or not the plaintiff's alleged injuries pre-existed the incident in question in this litigation.

51. Whether or not Dr. Patel is entitled to any lost wages and future loss of wages or loss of earning capacity;

52. Whether or not the plaintiff's alleged pain in his right shoulder created any, if any, disability;

53. Whether or not the fault or negligence of a third party, whether named or not, was the proximate or contributory cause of the incident of October 22, 2019.

54. Whether or not the Defendant, Marriott Hotel Services, Inc. was at fault for the incident in question in this litigation;

55. Whether or not there are facts that the Defendant, Marriott Hotel Services, Inc., was negligent or at fault for the incident in question in this litigation under Louisiana's Merchant Liability Act, La. R.S. 9:2800.6;

56. Whether or not the facts support that the plaintiff is entitled to any, if any, losses and damages allegedly suffered by him due to the accident in question;

57. Whether or not the facts support that plaintiff is entitled to any, if any, loss or damages for past, present or future loss of wages or loss of earning capacity;

58. Whether or not the facts support that the plaintiff is entitled to any, if any, damages for loss of enjoyment of life;

59. Whether or not there are facts that the Defendant, Marriott Hotel Services, Inc.. failed to properly train its employee, Kizzy Williams, to mop the lobby floor;

60. Whether or not there are facts that support any allegations of fact or causes of action asserted by the plaintiff in his Petition for Damages.

61.      Whether or not there are facts that support any allegations of fact or causes of action asserted by the plaintiff in his Petition for Damages.

62.      Whether or not Dr. Patel has suffered any past, present or future wage loss;

63.      Whether or not Dr. Patel will undergo any surgery to his right shoulder;

64.      Whether or not Dr. Patel's claim for lost wages is purely speculative;

65. Whether or not the opinions by Chris Reyes and Dr. Paul Thomas on behalf of the plaintiff are based upon speculative evidence or opinions;

## 9.      SINGLE LISTING OF CONTESTED ISSUES OF LAW

***

A.      Whether or not any negligence on the part of plaintiff was the legal cause of the accident, and the extent of same;

B.      Whether or not defendant's negligence was the legal cause of the accident, and the extent of same;

C.      Whether defendant's employee's failure to place the proper number of signs in the proper locations created an unreasonable risk of harm.

D.      Whether or not any negligence on the part of a third party was the legal cause of the accident, and the extent of same;

E.      The damages to which plaintiff is entitled as a matter of law, if any.

F.      Whether or not the plaintiff is entitled to past, present and future wage loss or loss of earning capacity;

G.      Whether or not the plaintiff is entitled to loss of enjoyment of life;

H.      Whether or not the plaintiff can prove that the Defendant, Marriott Hotel Services, Inc., was negligent or at fault under Louisiana's Merchant Liability Act, La. R.S. 9:2800.6;

I.      Whether or not the defendant, Marriott Hotel Services, Inc., was negligent in training its employees for mopping the lobby floor;

J.      Whether or not the plaintiff has alleged any negligence or fault on the part of the Loss Prevention Department of the defendant, Marriott Hotel Services, Inc., that can be related to the incident in question in this litigation;

K.      Whether or not the plaintiff's experts for vocational and economics evaluation can render an opinion of the plaintiff's alleged future loss of wages or earning capacity;

L.      Whether the plaintiff can prove that he is entitled to any future wage loss or loss of earning capacity;

M.      Whether or not the plaintiff is entitled to any, if any, damages or losses claimed in this litigation;

N.      Whether or not the plaintiff can prove any of the allegations of law or causes of action asserted in his Petition for Damages;

O.      The contested issues of law are implicit in the uncontested and contested issues of fact as set forth above.

P.     Whether Marriott Hotel Services, Inc. was negligent in failing to properly supervise Kizzy Williams

Q.     Whether Marriott Hotel Services, Inc. was negligent in failing to have proper policies and procedures in place to direct their housecleaning staff.

R.     Whether Marriott Hotel Services, Inc. was negligent in failing to properly train its Loss Prevention employee, Terry Javery.

S.     Whether Marriott Hotel Services, Inc. was negligent in failing to have proper policies and procedures in place to direct their Loss Prevention staff.

T.     Whether Marriott Hotel Services, Inc. was negligent in failing to properly supervise its Loss Prevention staff.

U.     Whether Marriott Hotel Services, Inc. spoliated evidence when it failed to preserve video that would have revealed when and where Kizzy Williams placed wet floor signs.

V.     Whether Plaintiff is entitled to adverse presumptions.

W.     Any and all other issues that are revealed by discovery and late taken depositions. At the time of filing of this Joint PTO, Plaintiffs have not yet received the deposition transcript of William Johnson.

## 10.    EXHIBITS

### a.    Plaintiff:

01. Video Produced  1 31 22………………………………………….…………..0001-0001

02. Video Camera 1 front desk - PRODUCED 5_6_22………………….…………....0002-0002

03. Video Camera 2 Front Desk - PRODUCED 5-6-22…………………………….0003-0003

04. Video Camera 1 - produced 5-18-22…………………………………....…….…0004-0004

05. Video Camera 2 - produced 5-18-22……………………………..……………..0005-0005

06. Video Camera 3 - produced 5-18-22………………………………..…..…………0006-0006

07. Video Camera 4 - produced 5-18-22………………………………..……..………0007-0007

08. PSR X-Ray Film Shoulder 2019-2021………………………………..…..…..0008-0008

09. MRA University Radiology Films 3 8 22………………………………  0009-0009

10. 2019 Tax Returns…………………………………………………………0010-0056

11. 2020 Tax Returns …………………………………………………………0057-0108

12. 2021 Tax Returns …………………………………………………………0109-0181

13. Paul Thomas Testimony Report ……………………………………………0182-0182

14. Dr. Paul Thomas CV ………………………………………………………0183-0184

15. Chris Reyes Testimony List ………………………………………………0185-0187

16. Chris Reyes CV ……………………………………………………………0188-0190

17. Chris Reyes Interview Notes ………………………………………………0191-0195

18. Vocational Economics Inc. - Expert Report ……………………..……..……0196-0290

19. Kizzy Williams Deposition……………………..………………………..…0291-0410

20. Williams-EX-2 Weekly Schedule……………………..………………..……0411-0428

21. Williams-EX-3 Certification of Completion……………………..…………0429-0429

22. Williams-EX-4 Photo  of Wet Floor Sign……..……………………………0430-0430

23. Williams -EX-5 Job Safety Analysis………………………………………0431-0433

24. William-EX-7 Picture of Lobby-Elevator Bank……………………………0434-0434

25. Kizzy Williams-Certificate of Completion…………………………………..0435-0435

26. Kizzy Williams - Marriott application………………………………………0436-0438

27. Marriott- wet floor sign………………………………………………….0439-0439

28. Marriott JSA - mopping………………………………………………….0440-0442

29. Marriott.JSA.Housecleaning Common Areas…………………………………0443-0452

30. Marriott.AM.Checklist……………………………………………..………0453-0455

31. Marriott.LossPrevention.SafetyManagementGuildlines.
SurveillanceCameras.Investigations ………………………………………0456-0457

32. Marriott PATROL 10 23 19 3 26 AM ………………………………..…..0458-0460

22

33. Marriott PATROL 10 22 19 23 58 PM ...................................................0461-0463

34. Photos of Sign Taken from inspection...............................................……0464-

0471 35. Management Agreement - MHSI and CNL

...................................................…....0472-0602

36. Management Agreement - Assignment MHSI..........................................,0603-

0607

37. Assignment and Assumption of Ground Lease Richards Canal

        Gumbo Alley...............................................…...................,,,,.0608-

0628

38. Heisser Deposition ................................................................0629-0680

39 Heisser - Ex 2 - Drawing of Lobby......................................................0681-

0681

40. De La Cerda  Deposition...............................................................0682-

0809

41. De La Cerda - Ex. 4 - Cert. Of Completion KW..................................0810-

0810

42. De La Cerda - Ex. 2 - Mopping JSA.............................................…...0811-

0813

43. Ervin Red Deposition...............................................................…0814-

0958

44. Red Exhibit 1 - Wet Floor Sign.......................................................0959-

0959

45. Red - Exhibit 2 -  Daily activity Report 10-21-19.......................……....0960-

0962

46. Red- Exhibit 3 - Daily Activity Report 10-22-19....................................….0963-0965

47. Red - Exhibit 4- Managing a Guest Accident..........................................0966-0966

48. Red - Exhibit 5 - Monitoring or viewing surveillance cameras.......................0967-0967

49. Red- Exhibit 6 - Security and Management Guidelines................................0968-0969

50. Red - Exhibit 7 - Security Recordkeeping Procedures...................................0970-0973

51. Red  Exhibit 8 - Slips and fall SMG...............................................…...0974-0975

23

52. Red - Exhibit 9 - New Hire Training Checklist.........................................0976-0977

53. Tulane ER certified records..............................................................0978-1031

54. Tulane ER - Radiology and ER Notes..................................................1032-1045

55. Rieber Narrative Report - 2-11-22.....................................................1046-1048

56. Ortho Unlimited Record.................................................................1049-1141 57. Orthopedic Unlimited.........................................................................1142-1287

58. Ortho Unlimited updated certified records  05.13.22....................................1288-1300

59. Ortho Unlimited Bill 10 25 2019-12 27 2021...........................................1301-1302

60. Milburn Records............................................................................1303-1406

61. Millburn - report............................................................................1407-1410

62. Montclair Radiology - MRA...............................................................1411-1413

63. Certified records from Jag One -2022....................................................1414-1450

64. Jag-One Updated Billing...................................................................1451-1454

65. Rieber CV....................................................................................1455-1549

66. Boudreaux CV...............................................................................1550-1556

67. Cliff CV.......................................................................................1557-1557

68. Ronnie Ducote CV..........................................................................1558-1561

69. Dr. Williams Curriculum Vitae............................................................1562-1565

70. Dr. Williams Trial Appearances 2022.....................................................1566-1566

71. Trial List Ronnie Ducote...................................................................1567-1575

72. Dr. Claude Williams-IME Report..........................................................1576-1579

73. Defense Voc Rehab - Ronnie Ducote Report 05172022...............................1580-1583

74. Defense Economic Report - Dan Cliffe 05172022......................................1584-1585

75. Discovery Responses from Marriott.......................................................1586-1655

76.     RWJ-PT certified medical records

77.     Terry Javery Proces Verbal

78.     William Johnson (30(b)(6) deposition and exhibits

79.     Surgical Quote – Dr. Rieber

80.     Surgical Quote – hospital

81.     Policy and Procedure Manual – Loss Prevention (subject of potential MTC)

82.     Policy and Procedure Manual (housekeeping) subject of potential MTC

83.     Patel Medical Expense Summary with Bills

**b.      Defendant:**

**The following exhibits are stipulated:**

1.      Photographs of the wet floor warning signs used at the JW Marriott New Orleans Hotel;

2.      Videos from the lobby cameras and front desk cameras of the incident in question in this litigation on October 22, 2019;

3.      Certified Reports, records, notes, graphs, and invoices from Tulane University Hospital & Clinic, including Emergency Room at Tulane Lakeside Hospital, concerning treatment of the plaintiff on October 22, 2019;

**The following exhibits are authentic, but plaintiff reserves rights regarding admissibility:**

**The following exhibits are neither authentic nor admitted:**

1.      Deposition of Dr. Chirag Patel taken on April 8, 2022;

2.      Deposition of Kizzy Williams taken on April 18, 2022;

3.      30 (b)(6) Deposition of  Adam De la Cerda, William Johnson, and Ervin Red;

4.      Guest Accident/Illness Report, No. 91-GAI-10, dated 10/22/2019, regarding the incident in question and the plaintiff;

5.    Report from Dr. Claude S. Williams of Southern Orthopedic Specialists;

6.    Deposition of Craig Heisser;

7.    Certified reports, records, notes, graphs, and invoices of Dr. Michael H. Rieber concerning his treatment of the plaintiff;

8.    Certified reports, records, notes, graphs, and invoices from Jag-One Physical Therapy, LLC – Westfield, concerning treatment of the plaintiff;

9.    Certified reports, records, notes, graphs, films and invoices from Milburn Medical Imaging, P.A. regarding treatment of the plaintiff;

10.   Certified reports, records, notes, graphs, films, and invoices from Montclair Radiology concerning treatment of the plaintiff;

11.   Certified reports, records, notes, films, and invoices from any doctor, nurse, or physician's assistant of any clinic, hospital, or healthcare facility that treated or examined the plaintiff before and after October 22, 2019;

12.   Any lawsuits filed by the plaintiff, Dr. Chirag Patel, before and after the incident in question in this litigation;

13.   Any claims for any accidents involving the plaintiff, Dr. Chirag Patel, before and after the incident in question in this litigation;

14.   Vocational rehabilitation report from Ronnie J. Ducote, II of Seyler Favaloro;

15.   Economic report from Kenneth Boudreaux, Ph.D. and Dan Cliffe, CPA;

16.   Certified tax returns from Dr. Chirag Patel and Dr. Jamey Patel for 2019, 2020, and 2021;

17.   Any posts, pictures, videos or writings of any kind or nature from the plaintiff's social media accounts, including, but not limited to Facebook, Tik Tok, You Tube, Instagram, etc.;

18.   Any personnel or wage records from any and all businesses that employed the plaintiff, Dr. Chirag Patel, before or after October 22, 2019;

19.   Any documents, reports, records, photographs, videos or exhibit of any kind or nature needed to impeach the plaintiff or any witness listed or called by any party involved in this litigation;

20.   Any exhibit identified in discovery or after the discovery period by any party involved in this litigation;

21.   Any deposition of any witness, fact or expert, listed or called by any party involved in this litigation;

22.   A copy of the insurance policy, with the limits and premiums redated, that provided coverage to any defendant involved in this litigation;

23.   Any video from the hotel concerning the incident in question in this litigation or the plaintiff prior to, at the time of, and after the incident in question in this litigation;

24.   Any and all discovery propounded upon and discovery responses submitted by any party involved in this litigation;

25.   Any and all documents, video, pictures or attachments in response to any request for production of documents by any party involved in this litigation;

26.   Any reports of any expert retained, listed or called by any party involved in this litigation;

27. Any documents, picture, video, or exhibit of any kind or nature that is needed to rebut any testimony of the plaintiff or any witness listed or called by any party involved in this litigation;

28. Any federal or state income tax statement concerning income declared by the plaintiff prior to and after October 22, 2019;

29. The Petition for Damages filed by the plaintiff in this litigation;

30. Interrogatories to and Answers to Interrogatories from the plaintiff in this litigation;

31. Request for Production to and Responses and documents attached to the Responses to the Request for Production from the plaintiff in this litigation;

32. Any ground leases of Gumbo Alley, LLC regarding its ownership of the land on which the hotel is located;

33. Any pleadings, exhibits, or documents of any kind or nature that are contained in the court's record in this litigation;

34. Any treatises, materials, or peer reviewed sources used or relied upon by any experts listed or called by any party involved in this litigation;

35. PowerPoint or Trial Director use of depositions, exhibits, pictures, or videos listed or used by any party involved in this litigation in discovery or at trial of this matter;

36. Any and all exhibits, documents, pictures, videos or writings of any kind or nature that are used, or admitted into evidence by any party involved in this litigation in discovery or at trial; and

37.     Any and all exhibits needed for demonstrative purposes which is identified, listed, or used by any party in discovery or at trial.

**11.**   DEPOSITION TESTIMONY TO BE OFFERED INTO EVIDENCE

a.  Plaintiff:

1.     Deposition of Kizzy Williams, and all exhibits attached thereto.

2.     Deposition of Craig Heisser, and all exhibits attached thereto.

3.     30(b)(6) deposition of Marriott Hotel Services, Inc., including testimonies of William Johnson, Ervin Red, and Adam de La Certa, and all exhibits attached thereto.

4.     Proces Verbal of Terry Javery and all exhibits attached thereto.

**b.  Defendant:**

5.     Deposition of plaintiff, Dr. Chirag Patel, and all exhibits attached thereto.

**12.   DESCRIPTION OF CHARTS, GRAPHS, ETC.**

a.     The plaintiff anticipates use of computer-generated discs of exhibits and use of electronic presentation of video evidence, PowerPoint Demonstrative slides,  timeline of events and medical treatment, summary of medical expenses, drawing of front desk area, and  other demonstrative models or items and exhibits, aids, enlarged copies of exhibits, deposition transcripts, and portions of exhibits as demonstrative aids during trial. Plaintiff may use enlargements, summaries,  and PowerPoint slides during opening and closing arguments and/or during examination and cross-examinations of witnesses.

b.     The defendant anticipates use of computer-generated discs of exhibits, PowerPoint Demonstrative Aid, Trial Director Demonstrative Aid, timeline of events and medical treatment,

other demonstrative models or items and exhibits, aids, enlarged copies of exhibits, deposition transcripts, and the plaintiff's answers to interrogatories as demonstrative aids at the time of trial. The defendant reserves the right to enlarge any available evidence and use it as a demonstrative aid during trial of this matter.  The defendant reserves the right to use any enlargements and PowerPoint demonstration during opening and closing arguments or during their respective examination and cross-examinations of witnesses.

13.    **WITNESSES**

    a.    **Plaintiff's witnesses list:**

        1.    Dr. Chirag Patel – plaintiff – fact, on direct, regarding the facts of his injury, his medical condition, pain and suffering, mental distress, expenses, loss of income past and future, and loss of enjoyment of life, and any and all other facts relevant.

        2.    Dr. Jaimy Patel – plaintiff's spouse, facts regarding the timeline on October 22, 2019, her observations of plaintiff's mental and physical

pain and suffering, her observation of the placement of any wet floor sign before the injury,  and any and all  other relevant facts.

3.     Kizzy  Williams  –  employee  of  defendant,  regarding  training, supervision,  policies  and  procedures,  and  placement  and  timing  of placement of wet floor signs and facts of accident.

4.     Adam  De  Le  Certa   -  employee   of  defendant,   regarding   training, supervision,  policies  and  procedures,  placement  of  wet  floor  signs  and facts of accident.

5.     Ervin Red – employee of defendant re training, supervision, policies and procedures, and actions of Terry Javery, placement of wet  floor  signs, investigation of accident and injury,  and downloading of videos, and any and all other relevant facts.

6.     William Johnson - employee of defendant re training, supervision, policies and procedures, and actions of Terry Javery, placement of wet floor signs , investigation of accident and injury,  and downloading of videos, and any and all other relevant facts.

7.     Craig Heisser – employee of defendant, regarding training, supervision, policies and procedures, placement of wet floor signs usually, placement of wet floor signs on date of accident, authentication of the drawing of the lobby, as well as any and all other relevant facts.

8.     Dr. Michael Rieber, Orthopedics Unlimited, 445 Pleasant Valley Way, West Orange, NJ 07052 – Expert – Plaintiff's post-injury treating physician, regarding Plaintiff's injuries,  medical treatment, therapy,

examinations, diagnostic testing, past, present, and future impairment, his opinions, surgical recommendation, and cost of recommended surgery, in accordance with his training, education, and experience.

9.   Chris Reyes, MRC, CRC – Plaintiff's vocational rehabilitation expert, regarding his interview of plaintiff, review of medical records, and opinions as to future vocational issues, all as set forth in the report issued in this matter, and produced to defendants, in accordance with his training, education, and experience.

10.   Paul Thomas, Ph.D., MRC CRC - Plaintiff's economic expert, regarding his analysis and opinions as to Dr. Patel's past and future losses of income, all as set forth in the report issued in this matter, and produced to defendants, in accordance with his training, education, and experience.

11.   Dr. Maria Frank or other representative of Tulane Medical Center, 4700 I-10 Service Road, Metairie, LA  70001, regarding the reductions of Plaintiff's dislocated shoulder, diagnostic testing, treatment, patient interview and facts and opinions in accordance with his/her training, education, and experience.

12.   Defendant's experts, Dr. Claude S. Williams, Ronnie J. Ducote, and Kenneth Boudreaux and/or Dan Cliffe, under cross.

13.   Any doctor, nurse, or physician's assistant and/or other representative of any clinic, hospital, or healthcare facility that treated or examined the plaintiff on or  after October 22, 2019 regarding facts learned, treatment provided, cost of treatment, and authentication of documents.

32

14. Records custodian and billing clerks necessary to authenticate records and/or bills from Tulane University Hospital and Clinic;

15. Records custodian for any doctor, clinic or healthcare facility that treated or examined the plaintiff on or after October 22, 2019.

16. Any representative from Marriott Hotel Services, Inc. and/or JW Marriott New Orleans Hotel needed to authenticate documents;

17. Any witness needed to authenticate any document;

18. Any fact or expert witnesses needed to rebut any witness;

19. Any impeachment witness;

20. Any witness needed to authenticate surgical quotes;

21. Any witness, fact or expert, later identified in discovery by any party involved in this litigation;

22. Any witness, fact or expert, deposed by any party involved in this litigation;

23. Any witness, fact or expert, listed or called by any party involved in this litigation in discovery, on a witness list, or at trial.

24. Any witness identified by any other witness and/or any party during discovery, disclosures.

b. **Defendants, Gumbo Alley, L.L.C. and Marriott Hotel Services, Inc.'s Witnesses they may call at trial:**

1. Dr. Chirag Patel – plaintiff – on cross-examination only – fact;

2. Kizzy Williams - fact;

3. Craig Heisser — fact;

4.    Ervin Red – Loss Prevention Supervisor at hotel regarding authenticating Loss Prevention;

5.    Adam De Le Cerda – fact;

6.    Dr. Claude S. Williams – expert, orthopedics – Southern Orthopedic Specialist;

7.    Dr. Michael H. Rieber – treating doctor of plaintiff – fact - fact – on cross-examination only;

8.    Ronnie J. Ducote, expert, vocational rehabilitation – Seyler Favaloro;

9.    Kenneth Boudreaux, Ph.D., and Dan Cliffe, CPA, experts, economic;

10.   Any doctor, nurse, or physician's assistant of any clinic, hospital, or healthcare facility that treated or examined the plaintiff before and after October 22, 2019;

11.   Records custodian and billing clerks necessary to authenticate records and/or bills from Tulane University Hospital and Clinic, including Tulane Lakeside Hospital;

12.   Records custodian for any doctor, clinic or healthcare facility that treated or examined the plaintiff before and after October 22, 2019.

13.   Any representative from Marriott Hotel Services, Inc. and/or JW Marriott New Orleans Hotel needed to authenticate documents;

14.   Any representative from Gumbo Alley, L.L.C. needed to authenticate document;

15. Any fact or expert witnesses needed to rebut any witness listed or called by any party involved in this litigation;

16. Any representative, supervisor, or owner of any business that employed the plaintiff, Dr. Chirag Patel, before or after October 22, 2019;

17. Any and all private investigators hired by any party to this litigation who conducted surveillance of the plaintiff;

18. Any fact or expert witnesses needed to impeach the plaintiff or any witness listed or called by any party involved in this litigation;

19. Any witness, fact or expert, later identified in discovery by any party involved in this litigation;

20. Any witness, fact or expert, deposed by any party involved in this litigation; and

21. Any witness, fact or expert, listed or called by any party involved in this litigation in discovery, on a witness list, or at trial.

22. Any fact or expert witness listed or called by any party to this litigation in discovery, on the may call witness list or called at trial of this matter.

23. Any other doctor or healthcare provider who has treated or examined the plaintiff before or after the incident in question in this litigation;

24. Any expert identified in discovery or listed by the plaintiff or his attorney regarding this matter;

25. Any fact witness needed for impeachment or rebuttal testimony at the trial of this matter;

26.    Any expert needed for impeachment or rebuttal testimony at the trial of this matter;

27.    Any witness whose testimony is needed for foundation or authentication of documents; and,

28.    Any fact or expert witness listed or called by any party to this litigation in discovery, on the may call witness list or called at trial of this matter.

**C.    All parties have filed a preliminary witness list in accordance with prior court orders.**

**14.    STATEMENT OF JURY/NON-JURY CASE**

This is a jury trial. Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the Court.

The Jury trial is applicable to all aspects of the case.

Counsel will prepare a joint statement of the case which will be read by the Court to the prospective panel of jurors prior to the commencement of voir dire which will be submitted to the Court no later than 5:00 p.m. five working days prior to trial.

**15.    STATEMENT REGARDING LIABILITY**

The issue of liability (will/will not) be tried separately from that of quantum.

16.   **STATEMENT REGARDING DISPOSITION OF THE CASE**

The parties know of nothing that would facilitate the disposition of this case other than the mediation scheduled for May 27, 2022 and/or the Court's settlement conference scheduled for June 13, 2022.

17.   **STATEMENT REGARDING TRIAL**

The trial shall commence on Monday, June 20, 2022, at 9:00 a.m., and is anticipated to take two to four days.

18.   **STATEMENT REGARDING FORMULATION OF PRE-TRIAL ORDER**

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared preliminarily in person and then subsequently via email and phone communicatoins.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19.   **STATEMENT REGARDING SETTLEMENT**

Plaintiff's statement:

The parties are holding a mediation on May 27, 2022 with mediator, Robert Dampf. Also, the parties will attend a settlement conference with Magistrate Judge Karen Wells Roby on June 13, 2022.  Plaintiff has provided a settlement demand to defendant, but has not received a reply or counter offer.

Defendant's statement:

The parties will hold a mediation on May 27, 2022 with mediator, Robert Dampf. Also, the parties will attend a settlement conference with Magistrate Judge Karen Wells Roby

on June 13, 2022. The parties, through their attorneys and adjusters, continue to conduct

settlement negotiations.

Respectfully submitted,

___/s/ Catherine Hilton

**RON A. AUSTIN, LSBA #23630**
**CATHERINE HILTON, LSBA #27238**
**Ron Austin Law, LLC**
**400 Manhattan Blvd, Harvey, LA 70058**
**Telephone:     (504) 227-8100**
**Facsimile:      (504) 227-8122**
raustin@ronaustinlaw.com
chilton@ronaustinlaw.com
**COUNSEL FOR PLAINTIFF,**
**DR. CHIRAG PATEL**


**AND**


**OSTENDORF TATE BARNETT, LLP**

*/s/John G. Alsobrook*
LANCE S. OSTENDORF (#10271)
lanceostendorf@otbtlaw.com
JOHN G. ALSOBROOK, LA Bar (20080)
johnalsobrook@otbtlaw.com
650 Poydras St., Suite 1460
New Orleans, LA 70130
Telephone:     (504) 527-0700
Facsimile:      (504) 208-3447
**COUNSEL FOR DEFENDANTS,**
MARRIOTT HOTEL SERVICES, INC.
AND GUMBO ALLEY, LLC